IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SANDRA K. CAMPBELL,

                     Plaintiff,                            OPINION & ORDER

    v.

                                                           13-cv-583-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                     Defendant.

---

Plaintiff Sandra K. Campbell seeks judicial review of a final decision of the Commissioner of Social Security finding her not disabled within the meaning of the Social Security Act. Plaintiff has a history of physical and mental impairments, including heart disease, arthritis, carpal tunnel syndrome, and depression. Plaintiff had previously qualified for Social Security benefits because she was disabled due to heart disease. She subsequently received a pacemaker, which significantly alleviated her symptoms. After a continuing disability review, her disability benefits were terminated.

Plaintiff contends that the termination was improper and that remand is warranted because the Administrative Law Judge (ALJ) (1) wrongly disregarded evidence of plaintiff's connective tissue disease and (2) wrongly discredited the opinion of Stephen Porter, PhD, the vocational and occupational specialist who treated plaintiff. The ALJ properly considered all the medical evidence provided to him, and the court affirms the Commissioner's decision.

BACKGROUND

**A. Procedural Background**

Plaintiff was born on December 22, 1966. She has a high school education and a limited employment history. She worked part-time in retail or customer service from 2007 to 2009. In September 2012, she was working online toward a college degree.

Plaintiff was found disabled and entitled to disability insurance benefits and supplemental security income as of June 16, 1998. Her disability was due to cardiomyopathy, which met or medically equaled a listed disability under 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d) and 416.920(d)).

In 2010, the Social Security Administration conducted a continuing disability review and determined that plaintiff was no longer disabled as of July 1, 2010, because her pacemaker had significantly alleviated her impairments. As a result, her eligibility for benefits terminated on September 30, 2010. This determination was upheld after a disability hearing by a State Agency Disability Hearing Officer. Plaintiff requested a hearing, and ALJ Thomas J. Sanzi upheld the determination on the grounds that plaintiff's cardiomyopathy had improved. The ALJ found that plaintiff had the residual functional capacity to perform sedentary work with several restrictions. R. 11-23.[1] Her continuing impairments did not prohibit her from working in a number of jobs in the national economy. Plaintiff's request for review was denied by the Appeals Council, making ALJ Sanzi's decision the final determination of the Commissioner. Plaintiff timely sought judicial review in this court pursuant to 42 U.S.C. § 405(g).

B. Relevant Medical Evidence

    1. Evidence of plaintiff's connective tissue disease

Plaintiff apparently concedes that her heart condition alone is not sufficient to establish her disability. But she contends that she has serious connective tissue disease that ALJ Sanzi wrongly discounted. "Connective tissue disease" is an umbrella term for a number of conditions, such as arthritis, which commonly produce inflammation and pain of the joints.

Plaintiff's connective tissue disease is documented in records from Gundersen Lutheran

---

[1] The record citations are to the Administrative Record, Dkt. 8.

Medical Center, particularly during the approximately two years from August 2010 to September 2012. Plaintiff sought treatment for a number of symptoms and conditions during this period. In view of plaintiff's criticism of the ALJ's decision, the court summarizes below the medical evidence focusing on plaintiff's connective tissue disease.

In 2010, plaintiff was seen by providers in various departments at Gundersen Lutheran. In August, plaintiff complained of mild puffiness in her hands and feet, R. 376, but she reported no relevant issues the following month, R. 331. Plaintiff's mobility appeared to improve. In August, plaintiff stated that she did housework and walked one-half to three miles on "most days," but that climbing stairs resulted in shortness of breath. R. 376. In September, John Houskamp, MD, reported that plaintiff had been working on weight loss and exercise, R. 331, and Jeanne Johnson, MD, noted that plaintiff walked for approximately one hour per day and could slowly walk up two flights of stairs without shortness of breath. R. 327.

In October, plaintiff reported worsening symptoms in her joints, particularly at night, and pain in her knees and hands. R. 323. Nurse practitioner Sharon Barnhart noted inflammation in plaintiff's fingers and wrist, but not in her knees. R 324. Barnhart further reported full strength in plaintiff's upper and lower extremities. Plaintiff's tests for inflammation were normal, and tests for rheumatoid arthritis were negative. R. 356.

Records from November 2010 show that plaintiff contacted Gundersen Lutheran regarding her eligibility for disability benefits, which had ended in September. R. 390-91. Physicians questioned whether plaintiff was taking medication prescribed to her because they learned from plaintiff's pharmacies that she had not filled her prescriptions in 2010. R. 390. When asked about this, plaintiff denied that she had not been filling her prescriptions.

In 2011, the records of four of plaintiff's visits to Gundersen Lutheran are particularly informative of the severity of plaintiff's connective tissue disease. In July, plaintiff complained of

3

knee pain and swelling, particularly in her right knee, but Barnhart did not observe inflammation of her elbows, wrists, and knees. R. 524-25. However, Barnhart indicated that plaintiff had slight thickening in the joints of her left hand. R. 525.

The following month, plaintiff's complaints varied widely. On August 5, 2011, plaintiff reported that her knees were fine. R. 541. Dr. Houskamp stated that:

> X-rays and other scans have shown some very mild degenerative changes. Overall, her multiple issues have not really given a picture of somebody who is totally disabled. [Her psychiatric history] has played a role in her issues. She also has a significant history of noncompliance which has also made treatment more difficult.

*Id.* He reported that plaintiff's physical exam was "fairly benign" and that psychiatric, rather than physical, issues would be more likely to limit her ability to work. R. 542. He concluded that "[i]f she does have limitations due to her back or knees, that also could contribute some although there is not any objective evidence of severe disease." *Id.*

A week later, on August 12, 2011, plaintiff was back at Gundersen Lutheran for her joint pain, which she rated an eight out of ten. R. 545-46. She stated that her right knee was fine (but complained of pain in her left knee) and denied joint problems in her hands or upper extremities. R. 544. However, Barnhart's examination indicated no tenderness or swelling, except mild tenderness in her left knee and in her lower back. R. 546. Barnhart determined that, overall, plaintiff did not have much joint inflammation that day.

In September 2011, physical therapist Beth Hermes-Mitchell prepared notes on plaintiff's progress. R. 576-77. Hermes-Mitchell treated plaintiff several times for her low back pain which also affected her left leg, resulting in decreased strength, flexibility, and range of motion. R. 576. Plaintiff reported and Hermes-Mitchell observed improvement; plaintiff could stand and do dishes and had increased the distance she could walk, and Hermes-Mitchell noted that plaintiff's strength and range of motion improved. R. 577. Plaintiff tolerated treatment

4

well. But Hermes-Mitchell discharged her from physical therapy because of her inconsistent attendance. Plaintiff had failed to show up for two scheduled appointments.

Finally, the court notes three records in 2012. In February, plaintiff complained of severe left knee pain (eight out of ten) as well as shoulder and low back pain. R. 604, 606. Barnhart stated that plaintiff's x-rays of her knee were "fairly intact" other than mild narrowing of joint space. R. 605. Barnhart did not observe tenderness or swelling in plaintiff's knees. R. 606. Plaintiff had good flexion and extension in her wrists, elbows, knees, and hips. In April, plaintiff called Gundersen Lutheran with complaints of increased, severe leg pain, affecting her knees, hips, and back. R. 618. Plaintiff had overslept her previous appointment and stated she wanted to schedule another one. *Id.* In September, Barnhart identified plaintiff's symptoms as consistent with carpel tunnel syndrome. R. 647.

### 2. Dr. Porter's opinions

Stephen Porter, PhD, is a psychologist who worked at Gundersen Lutheran. Although Plaintiff refers to Dr. Porter as a vocational and occupational specialist who was involved with her care, the records reflect that Dr. Porter's primary role was to evaluate her disability status. On October 5, 2010, plaintiff went to Gundersen Lutheran's physical medicine and rehabilitation department in connection with her disability status. R. 326. Plaintiff stated that she was doing fairly well overall. Dr. Porter noted that plaintiff's primary disabling condition was her cardiomyopathy. He stated: "I would support her continued today [sic] disability status." *Id.*

Dr. Porter prepared two questionnaires dated September 29, 2010 to support her claim for disability. In one questionnaire, Dr. Porter opined on plaintiff's mental impairments. R. 643-44. He reported that plaintiff was limited in several respects (e.g., attention, attendance, and interacting with others) and would have difficulty sustaining regular employment on a full-time

5

basis. In the other questionnaire, he opined on plaintiff's physical limitations. R. 645-46. Specifically, he stated that plaintiff could sit for about four hours, and stand or walk less than two hours. He also stated that plaintiff was limited in the use of her hands, fingers, and arms. He noted plaintiff's cardiac impairment in handwritten notations.

Also in September 2010, Dr. Porter and Timothy Harbst, MD, prepared a report to provide their opinion on whether plaintiff was no longer disabled and able to work. R. 333-35. They concluded that plaintiff "continu[es] to be 100% totally and permanently disabled." R. 334. However, they also noted that plaintiff's primary disabling condition related to her heart, and that she "would be confined to very light duty or sedentary type work." *Id.*

In December 2010, plaintiff returned to the physical medicine and rehabilitation department to address her disability status. R. 393. The treatment notes, signed by both Dr. Porter and Dr. Harbst, stated that "based on Sandy's total physical/medical and psychiatric status, she would not meet the criteria to be considered disabled." *Id.*

## C. The Administrative Hearing and Decision

On September 7, 2012, ALJ Sanzi held a 61-minute video hearing during which he took testimony from two witnesses, plaintiff and Allen J. Noll, an independent vocational expert (VE). R. 30-65. The documentary evidence, including plaintiff's medical records summarized above, was admitted without objection.

The ALJ asked plaintiff about her education, her work history, her daily activities, and the reasons why she was unable to work. Plaintiff testified that she cannot work because of certain physical and mental impairments, including: congestive heart failure; arthritis; carpal tunnel syndrome; fatigue; mobility challenges; depression; and anxiety. R. 44-54. The ALJ then asked Mr. Noll a series of hypothetical questions involving a person with plaintiff's limitations, all of which assumed a person of plaintiff's age and education. R. 58-62. Mr. Noll testified that

6

plaintiff could not do past relevant work, but she could do other work available in Wisconsin, including: production worker; inspection tester and sorter; and cutting, punching, and press machine operator. *Id.*

The issue before the ALJ was whether plaintiff's disability ended as of July 1, 2010, under sections 223(f) and 1614(a)(3)(A) of the Social Security Act. The ALJ issued a decision on September 28, 2012, concluding that plaintiff had not been disabled since July 1, 2010. R. 11-23. In short, the ALJ determined that her cardiomyopathy (the basis of her past eligibility for benefits) had improved, and plaintiff's continuing impairments, although severe, did not prohibit her from working in a number of jobs in the national economy. Although plaintiff could not perform past relevant work, there were jobs available to her that required only sedentary work with several restrictions: no climbing ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional stooping or crouching; simple, routine, and repetitive tasks in a low-stress job; and only occasional decision making and changes in the workplace. For these reasons, the ALJ determined that plaintiff was not under a disability within the meaning of the Social Security Act.

## ANALYSIS

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of ALJ Sanzi. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, the court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, ALJ Sanzi must have built "an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff argues that remand is warranted because ALJ Sanzi wrongly disregarded evidence of plaintiff's connective tissue disease and wrongly discredited Dr. Porter's opinions. After reviewing the record in this case, the court concludes that the ALJ properly considered evidence of plaintiff's connective tissue disease and evidence from Dr. Porter.

**A. Plaintiff's connective tissue disease.**

Plaintiff contends, at points in her briefs, that ALJ Sanzi "completely ignored" her connective tissue disease, Dkt. 14, at 19, and that the ALJ wrongly concluded that her connective tissue disease was not severe, Dkt. 22, at 8-9. These hyperbolic contentions are flatly contradicted by the ALJ's written opinion. R. 13, 16, 19, 21. The ALJ specifically addressed plaintiff's connective tissue disease:

> The claimant has a history of connective tissue disease that causes joints to randomly swell, including her knees, elbow and fingers to a mild degree. However, her examinations have shown no ongoing evidence of inflammation and the claimant does not require ongoing treatment for this condition. Her laboratory work-up has been normal. For example, when she complained of 8/10 pain in September 2011, her treating provider commented that "overall" the claimant did not have a lot of joint inflammation to support her complaints. She has ointment for flare-ups and does have intermittent problems with

> swelling of her knees and hands, yet is able to ambulate without the need of assistive devices. The most severe findings regarding this impairment have been only "some mild synovitis" on isolated occasions that is improved by medication without any side effects.

R. 19 (internal citations omitted). The ALJ considered plaintiff's connective tissue disease in determining her residual functioning capacity (RFC), including this impairment among several as a reason to limit plaintiff to sedentary work, with additional restrictions. R. 21. Plaintiff's insistence that the ALJ "provided nothing, simply ignoring the evidence" is completely unfounded, and plaintiff's reliance on cases like *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("The ALJ's opinion does not even mention Terry's pelvic floor and urinary disorders."), is not effective. Dkt. 14, at 21-22.

At other points, plaintiff contends that the ALJ cherry-picked facts that support a finding of non-disability. Dkt. 22, at 3-7. But the ALJ's analysis of the evidence relating to plaintiff's connective tissue disease was actually quite thorough. The ALJ noted plaintiff's history of connective tissue disease and recognized that it has caused her joints to "randomly swell," including "intermittent" swelling in plaintiff's knees and hands, and mild synovitis. R. 19. The ALJ's conclusion that there was a lack of "ongoing evidence of inflammation" is well supported by the record. *Id.* Not only would plaintiff's complaints of inflammation vary as to location and intensity, but the objective evidence was at odds with her subjective complaints. R. 17-21; *see, e.g.*, R. 376, 331, 324, 356, 524-25, 541, 545-46, 577, 604. The ALJ discussed in appropriate depth plaintiff's considerable mobility and her irregularity in pursuing treatment, including physical therapy. R. 18; *Schmidt v. Astrue*, 496 F.3d 833 (7th Cir. 2007). The ALJ may properly discredit plaintiff's complaints that are inconsistent with medical reports. *See, e.g., Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). In *Schmidt,* the claimant's assertions of pain were inconsistent with other evidence in the

9

record, including physicians' notes indicating normal strength and reflexes, discontinued physical therapy, and significant daily activities. 496 F.3d at 844. That court determined that the ALJ provided sufficient reasons for finding that the claimant's allegations were not fully credible. *Id.* Here, ALJ Sanzi provided sufficient reasons for his conclusion based on a thorough review of the evidence, including records relating to plaintiff's connective tissue disease.

Plaintiff's last argument is that her impairments were not appropriately taken into account at the hearing and in the RFC. Dkt. 22, at 9-10. But the ALJ's hypothetical questions to the VE and the ALJ's RFC determination included restrictions pertinent to plaintiff's connective tissue disease and mobility: sedentary work; no climbing ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; and occasional stooping or crouching. The ALJ properly considered and weighed evidence relating to plaintiff's connective tissue disease, and plaintiff's limitations were appropriately reflected in questions to the VE and in the RFC.

## B. Dr. Porter's opinions

Plaintiff contends that ALJ Sanzi failed to consider and give weight to Dr. Porter's opinions and failed to provide a sufficient explanation for discrediting them. Dkt. 14, at 22-23. Plaintiff further argues that the ALJ did not indicate whether Dr. Porter's assessment was adopted. Again, plaintiff's arguments are hyperbolic: the ALJ stated that he gave Dr. Porter's opinions no weight, so his assessment was obviously not adopted. R. 21. The real issue is whether the ALJ provided a reasoned basis for discrediting Dr. Porter's opinions, applying the requisite factors.

The ALJ was required to consider specified factors in evaluating Dr. Porter's opinions. SSR 06-03p; 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Roddy v. Astrue*, 705 F.3d 631, 636-37 (7th Cir. 2013). The factors are: the examining relationship; the treatment relationship; the degree to which the source presents an explanation and relevant evidence to support an opinion;

how consistent the medical opinion is with the record as a whole; whether the opinion is from a specialist and is about medical issues related to his or her area of specialty; and any other factors which tend to support or contradict the opinion. SSR 06-03p. If the ALJ discredits a medical opinion, he must "provide a sound explanation for the rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). That explanation must allow a reviewing court to conclude that the ALJ actually "weighed the merits of [a source's] opinion [and] engaged in the careful analysis required by the regulations and case law." *Id*. The ALJ considered the appropriate factors and provided a sound explanation for rejecting Dr. Porter's opinions.

Although the ALJ did not mechanically walk through each factor, he gave adequate consideration to the factors material to his decision. Consistency is a factor that tends to support an opinion. SSR 06-03p. One reason the ALJ discredited Dr. Porter's opinions was that they were contradictory. R. 20-21. The December 2010 treatment notes from Dr. Porter and Dr. Harbst stated that "once again based on Sandy's total physical/medical and psychiatric status, she would not meet the criteria to be considered disabled." R. 20-21, 393. This contradicts Dr. Porter's September 2010, questionnaires suggesting that plaintiff would not be able to sustain the mental and physical demands of any job. R. 21, 643-46.

Another SSR 06-03p factor is the degree to which the source presents an explanation and relevant evidence to support an opinion. The ALJ discredited Dr. Porter's opinions because they were insufficiently supported. R. 20-21. Noting that Dr. Porter "provided no explanation whatsoever, and no clinical evidence is found in the treatment record," the ALJ gave the questionnaires no weight. R. 21. Explanation and reference to objective information were also absent in Dr. Porter's October 2010 evaluation of plaintiff, in which he stated that he would support her disability status. R. 326. In his notes, Dr. Porter stated that plaintiff's primary disabling condition was her cardiomyopathy and that plaintiff was doing fairly well overall.

11

The ALJ provided an additional reason for discrediting the questionnaire opining on plaintiff's physical limitations. R. 645-46. The ALJ explained that, first, the limitations were not supported by reference to "actual abnormality" and, second, Dr. Porter's assessment regarding plaintiff's physical limitations was not within his expertise as a psychologist. R. 21. Again, these considerations reflect factors under SSR 06-03p. Dr. Porter's opinions about plaintiff's limitations and his support of plaintiff's request for disability benefits were reasonably addressed by the ALJ.

Plaintiff questions the ALJ's consideration of a September 2010 report, R. 333-35, in which Dr. Porter and Dr. Harbst opine that plaintiff "continu[es] to be 100% totally and permanently disabled." R. 334. As with Dr. Porter's other opinions, the ALJ explicitly addressed this report in his decision with reasoned analysis. R. 20.

Plaintiff further argues that the ALJ should have accepted Dr. Porter's opinions because his "assessments have been considered and used in Social Security cases for some time." Dkt. 14, at 23-26. This argument is unavailing. The cases cited by plaintiff to urge the court to accept Dr. Porter's opinions as tried-and-true do not support plaintiff's argument. In these cases, the court questioned or rejected Dr. Porter's opinion for lack of support or lack of expertise, or denied that Dr. Porter was a treating physician. Plaintiff replies that the "cases were not offered for their factual relevancy but to establish that Dr. Porter was not a 'mere' psychologist, but was a vocational rehabilitation specialist." Dkt. 22, at 11. However, Dr. Porter was referred to as a psychologist and, in at least one instance, was deemed potentially unqualified to assess the claimant's physical limitations. Moreover, regardless of whether Dr. Porter was a psychologist or a vocational specialist, or whether he was a medical or "other" source, the SSR 06-03p factors apply. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ explained the material reasons why he declined to afford weight to Dr. Porter's opinions. The court concludes that the ALJ

12

considered the appropriate factors, and his explanations were reasonable and supported by the record.

## ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Sandra K. Campbell's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 30th day of September, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge